**Vittorio NARDI, Plaintiff,**

v.

**STEVENS INSTITUTE OF TECHNOLOGY,
Defendant.**

**No. CIV. A.96CV4508DGT.**

United States District Court,
E.D. New York.

Oct. 13, 1999.

---

William Mullin, Graham, Miller, Neandross, Mullin & Roonan, P.C., New York City, for plaintiff.

Raymond C. Fay, Andrew N. Cook, Bell, Boyd & Lloyd, Washington, D.C., for plaintiff.

Maurice J. Nelligan, Apruzzese, McDermott, Mastro & Murphy, P.C., Liberty Corner, NJ, for defendant.

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

Defendant, Stevens, moves for reconsideration of that portion of the August Memorandum and Order which allowed an implied employment contract theory to proceed to trial. *See Nardi v. Stevens Inst. of Tech.,* 60 F.Supp.2d 31, 45 (E.D.N.Y. 1999). Stevens maintains that the implied contract theory "imposed by the Order":

(1) was not argued by plaintiff in his motion;

(2) was contrary to other rulings in the same Order;

(3) was unsupported by the evidence on the record; and

(4) imposes unjust contractual obligations on defendant in particular and academic institutions in general.

*See* Def.'s Mot. for Recons. at 1. For the reasons stated below, the motion for reconsideration is denied.

**Discussion**

**(1)**

Stevens first asserts that reconsideration should be granted here because Dr. Nardi never claimed that the three year AFOSR grant created an implied employment contract. Instead, Dr. Nardi only claimed that he had an implied lifetime employment contract with Stevens, so long as he continued to get funding.

This assertion is patently untrue. Paragraphs 19–23 of plaintiff's Fist Amended Complaint describe the effort Dr. Nardi expended to secure the 1994–1997 grant and subdivision c of Count I clearly asserts that "Stevens breached its contract with Dr. Nardi by terminating [his] employment prior to the completion of the AFOSR grant." Pl.'s First Am. Compl. at 12. Also, the transcript of oral argument on Stevens' motion for summary judgment reflects numerous references by plaintiff's counsel to the three year grant and how it affected Dr. Nardi's employment agreement. *See, e.g.,* Transcript of Hearing, dated July 13, 1999 at 24–25, 30–31, 33–34,

36–38. Moreover, even if it had not been specifically asserted, leave would have been granted to plaintiff to amend the complaint accordingly. Stevens would not have been prejudiced in its ability to defend the claim.

**(2)**

Stevens' second assertion is that the decision to allow the implied contract claim to survive summary judgement is at odds with the other rulings on the motion. Specifically, the argument is that because Dr. Nardi was found not to be a party to the AFOSR contract, for purposes of his third-party beneficiary claim, this same contract could not provide a basis for an implied employment agreement. Additionally, since Dr. Nardi's claim of an implied lifetime employment contract with Stevens was rejected, an implied three-year contract should also be rejected.

There is nothing inconsistent about the rulings. The decision that Dr. Nardi was not an intended third-party beneficiary of the AFOSR grant related only to what the Air Force intended regarding the grant and does not preclude the possibility of an independent agreement between Stevens and Dr. Nardi. Moreover, while the record would not permit finding that Dr. Nardi had a lifetime employment contract with Stevens, there was certainly enough evidence to raise a question of fact as to whether or not Stevens agreed to continue to employ Dr. Nardi throughout the term of the 1994–1997 AFOSR grant.

**(3)**

Stevens' third ground for reconsideration is primarily a recounting of the evidence in the record that indicates there was not an implicit employment agreement between Stevens and Dr. Nardi relating to the grant. The information in this section of the motion actually seems to support the ruling, since it highlights the material questions of fact that need to be addressed at trial.

### (4)

Stevens' final argument is presented as a public policy argument, to wit, "The Implied Contract Endorsed by the Court Changes the Landscape of Employment of Academic Research Professionals." Def.'s Mot. for Recons. at 5. Basically, Stevens maintains that the ruling would transform every multi-year research grant into a multi-year employment contract, not only for the principal investigator but for every researcher listed on the grant as well. This, according to Stevens, will result in bad professors keeping their jobs just because they secured a grant; research centers being liable to professors who are hired for a term less than the term of the grant and are not reappointed; and employers having to continue employing professors for the full term of the grant, even if the grant funding is terminated. Stevens also argues that there is no mutuality of obligations in this implied contract, since the researcher may choose to leave in the middle of the grant term and be replaced by an acceptable substitute, while the employer cannot exercise the similar option of firing and replacing a researcher mid-grant term.

The gloomy forecast offered by Stevens of the effect that the ruling may have on academia is overwrought. As plaintiff points out in its opposition to this motion, Stevens is free to negotiate any type of employment agreement it wishes with its researchers, specifying, if it so chooses, that terms of employment are not related to grant terms. Finally, the mutuality of obligations question is one best resolved at trial, although it seems to be met here by the requirement that plaintiff's funding continue and by possible damages should plaintiff leave in a manner that is inconsistent with the express or implied terms of the three year agreement.

### Conclusion

Stevens has not brought to this court's attention any meritorious "matters or controlling decisions which ... the court has overlooked." S. & E.D.N.Y. Civ. R. 6.3.

Thus, this motion for reconsideration is denied.

SO ORDERED: